We'll hear argument next this morning in Case 10-1018, Filarsky v. Delia. Ms. Millett. Mr. Chief Justice, and may it please the Court, when a private attorney is temporarily retained by the government to work in coordination with or under the direct supervision of government employees in fulfilling the government's business and getting the government's work done, that attorney is entitled to the same function for that same government would receive. In this case, that is qualified immunity. That rule comports with the history and policy concerns that have animated this Court's section 1983 and immunity jurisprudence. If that's across the board, Ms. Millett, the rule you just stated, is there any situation in which a private attorney engaged to assist a government office in the performance of a public function would lack qualified immunity? Or is it simply, whatever government agency employs a private attorney to assist it in doing its work, that attorney will have qualified immunity? I think it may well be the latter rule, the more broader one, but for these purposes, the Court only needs to decide the situation when they are working in coordination with or under direct supervision of government employees. And I want to clarify that answer because Howen defines doing a public service. For example, if a State government appoints somebody to represent one of their police officers who sued in a 1983 action, if there's five defendants, the Attorney General can't represent them all, they will outcommonly appoint people and will pay them. Some States will pay them from the State FISC, and so they will be paid by the government to perform a governmental function in that sense. But their allegiance there is to the individual employee, not to the government. The same with public defenders. So there are certain situations where someone can be retained by the government in that sense, paid by the government in that sense. Alito, why does it matter whether the privately retained attorney works in close cooperation with government employees? Suppose in this case Mr. Filarski had simply been hired to go off and perform this investigation and at the end of the investigation report the results to the town. Would the case come out differently, then? I don't think that would, but in this, I think it depends on what one means by coordination with or supervision. And with respect to attorneys, attorneys can never be an independent contractor in relationship to their client in the way the prison was in Richardson. Attorneys just can't be. They are always, in the sense of the rule that I'm using, working for their client agency, their client government, and under its control and authority. And the decisions they make are the decisions of that client. And that's why the whole reason we should have this rule is understanding what immunity protects. It protects government decision making, governmental conduct, and its ability to maneuver within an area of reasoned decision making. And I suppose you can argue that there is a built-in limitation because the question doesn't even come up unless there's State action. So there has to be close enough cooperation so there's State action. I had never thought that when a private attorney gives an opinion letter to a government agency or government entity at its request that there's any State action there at all. So that question, so there the question just wouldn't even come up. Am I correct? Certainly the State action limitation both limits the operation of this rule. There's many times attorneys or others who work with the government will not implicate the State action rule. And that's sort of the irony of this case, and I think it would not be uncommon in attorney cases. The only reason this was a tort, or an alleged tort, is because the government was involved, because governmental actors took his advice, conducted a search. He didn't. Issued an order. He didn't. And yet we have, we're left in this odd world where the only way this tort, constitutional tort lawsuit can go forward is without the government. Now, 1983 is about deterring governmental conduct. But this Court's immunity jurisprudence says we don't over-deter and we want to allow the government to operate within a realm of reasoned decision-making. And they need to operate within that realm, get reasoned advice and make reasoned decisions, regardless of whether the source of the advice is a temporarily or permanently retained attorney. The need is for reasoned decision-making. And if you over-deter, which is what an action against the private attorney, who is now charged with litigating and defending the government's allegedly unconstitutional conduct, standing all alone while the government actors have walked away, that turns Section 1983 on its head. Roberts. But your test, and this is, I think, goes broader than the articulation of the test, doesn't give this private attorney much assurance by itself. It's sort of a multi-factor. Is he coordinating? Is he under the supervision? Is he really doing public service? I mean, if the idea is to give him sufficient breathing room so he doesn't stop, and when, as in this case, he's threatened, that we're going to sue you if you do this, he has to think, well, now, am I being supervised by the government? Am I coordinating with the government, or am I telling them what the test itself undermines the asserted purpose? Well, two responses to that. First of all, the State law requirement, the State action requirement that Justice Kennedy referred to, will up front require allegations by the plaintiffs that will discuss the coordinated, presumably the coordinated action. There's got to be some level of coordination. But the second reason is, as I said, with respect to attorneys, I don't think this is going to be a hard question, because they are forever agents. And fiduciaries, they can never be the independent contractor that you had in Richardson. They are always answerable to and working for their governmental client. And when I say supervision here, I don't think the test here is a, is it on hands, day to day, looking over your shoulders. The government has to be able to get the advice of professionals and to trust them. Alito, suppose the government hires an attorney to do an independent investigation and hires an outside attorney precisely because it does not want to be faced with allegations that it has manipulated the outcome of the investigation, because its own conduct is at issue. So they say, you're going to be independent, hands off, we're not going to interfere at all. But that would still, in your submission, satisfy the coordination requirement. It would, in the sense, because there would be, and I'm assuming here we're not talking like a Bivens appointment or something like that. But here, because understand what happens in that situation. They're being appointed to investigate for the government and on behalf of the government. And it's not usually because we say the government writ large may have done something that would create a conflict. It may be that an individual employee or something. That's where the conflict comes. But they're working for the government. The government is their client.  And that's the reason why they're not freewheeling independent contractors. Alito, what is the difference between that and the prison situation? The private prison, the guard in the private prison is performing a function that has been delegated to that or assumed by that entity, pursuant to a contract. I don't understand exactly what the difference is. The difference is, there's a practical difference and then a legal doctrinal difference. The practical difference is that in Richardson, it was a quite unique situation where the government really had washed its hands of the prison operation. It had put the day-to-day operation of the prison, the decisionmaking of the prison, how we treat the prisoners, entirely in the hands of a private contractor, subject only to what this Court said was very limited supervision, essentially in contract terms. But it had ceded that authority, and it did not exercise the control. It did not exercise the day-to-day decisionmaking. And that's where we get into the doctrinal point. So the decisions that were being made there and the lawsuit concerned, there wasn't a single governmental defendant named in that case. It was just the private company, the private guards that were at issue there. And the decisions that were made were the private company's decisions. And so this Court said there, that's not what qualified immunity is out to protect. It is to protect what? The government's decisionmaking, the special concerns that arise when you are bringing lawsuits that are designed to regulate, limit, deter governmental decisionmaking. We have to protect that area of reason. If the government's not making the decision, they've passed the buck, they've handed it off. There's nothing to protect. Sotomayor, I'm sorry. Sotomayor, it seems to be that there's enough evidence that the lawyer was the one who held the investigation. The people who attended the meeting between the lawyer, the Respondent, and the other personnel that were there were acceding to what he was doing. The Chief, he goes to the Chief and he says, I want you to do this. And the Chief is relying on him, not his own independent judgment, to issue the command that's contested here. So that sort of puts your argument on its head, because it appears that he was more the independent investigator than he was the individual under the control of the agency. Okay. Well, first, a couple of responses. First of all, no, that's nothing like Richardson. This was the government's investigation. They initiated it. They brought him onto the team for his expertise, much like prosecutors might bring on a psychologist to evaluate a criminal defendant. Now, are the prosecutors going to sit there and say, you know, psychologist, you should ask this question, or are they going to defer to the medical expertise? That's the same thing. Sotomayor, this argument seems to fall under what Justice Scalia termed a functional test, that he's serving just like any other government lawyer. If you were going to fit this case under the Richardson majority test, how would you do it? And I do that, first of all, I keep in my mind, I'm putting it right in Richardson's language, which said, it was reserving this very question, and that is when an attorney or any individual is working in close coordination or under the supervision of government officials in the performance of an essential function. And so that makes clear that Richardson was deciding not that situation, the handed off turnkey situation. This — there's no turnkey here. This is Mr. Floreski being brought into the team. Scalia, independent counsel would not be covered. I mean, if you have, you know, counsel appointed because — to show that the administration is disinterested in this prosecution and you get independent counsel, the attorney general says, I will not interfere with him, the President says, I will not interfere with him, then him you can sue without any immunity, right? No, and that's why he's not working in close coordination. He's not subject to supervision. The whole purpose of an independent counsel is to eliminate supervision. Yes, but independent counsel is still sued in the name of the United States. Their client was the United States government. That is whom — that is the interest in which they worked. They were — they had a client that they were answerable to. They were not freewheeling independent contractors. They were client attorneys with a client. Scalia, weren't the prison guards who were suable in Richardson, weren't they suable under 1983 as acting under color of law? This Court assumed that question. It did not answer it in that case. Well, the whole issue would have been a non-issue if they couldn't be sued. This Court assumed it. Look, I think it's fair to assume when you're operating in a prison, although I think to — there's a reason this Court reserved it, because the question there is with — certainly the corporation was under color of law, whether the individuals who worked for the corporation would also be under color of law. Don't you think the two should go pari passu, as we say, that if you can be sued for acting under color of law, you ought to have the defenses that people who are acting with legal authority have? Well, this Court's already crossed that bridge in cases like Wyatt, where, for example — and it does, because the State law requirement can sweep broadly in some situations. So I don't think in a situation like Wyatt v. Cole, where you have private plaintiffs pursuing their private agenda, and they simply invoke a State law, that that makes them integrated with the government in the way that an attorney is, and certainly the way Petitioner was here, that they're not part of the governmental team and they weren't making decisions in the interest of the government. There was no governmental decisionmaking to protect there, and that's what the rationale this Court gave for denying qualified immunity in Wyatt. The key here is that this is exact — you cannot protect governmental decisionmaking in this context without protecting the source of advice for that decisionmaking. Roberts. Lawyers are not supposed to be cowed by the exigencies of the situation. We're worried in qualified immunity with protecting governmental actors to make sure they will feel comfortable doing the right thing, rather than being intimidated in the situation we had here. Lawyers have that professional obligation in the first place. So why does a lawyer need the defense of qualified immunity? There are a couple of reasons. First of all, that rationale would mean no government lawyers get the protection either, because they have that exact same obligation of fealty. And we don't apply that rule. That hasn't even been questioned. And the reason we don't is we understand that this is a more — it's a more layered inquiry into timidity. First of all, we don't even want the subconscious pressures that would come with full freight liability for governmental conduct to any angry third party, even subconsciously interfering with the decisions of government lawyers, temporarily or permanently retained. Secondly, we want the government to be able to get the advice, to be encouraged to get the advice. Section 1983 must support governments getting legal advice to counsel them in complying with the law that Section 1983 enforces. But government will be deterred from obtaining legal advice if the cost of getting an attorney — especially if you're a small town, municipality, county, you can't afford a full-time staff. And the cost of getting an attorney is all those things that qualified immunity wanted to protect against.  And a jury is going to assess liability for a reasonable governmental decision. Ms. Blatt, our cases have said that we're supposed to look not only to policy, but also to history. Would you disagree with the premise that a person in your client's position, historically, would have had at most an actual malice — a malice defense or a reasonable cause defense? Would a person have anything more than that? They would have had the same sort of good-faith defense that this Court in Harlow turned into qualified immunity, both as lawyers were — But in Wyatt, we said that that was a very different kind of immunity than the Harlow immunity. And we said, historically, it provided no basis for giving Harlow immunity. Well, it — the Harlow immunity came from the same roots. What happened in Wyatt was we said we will turn that into protection for the government when we need to protect the special functioning of government. You had no need — the Court had no need to do that in Wyatt because there was no governmental decisionmaking at stake there. But the same type of defense this Court recognized in Richard's case — So I take it that your answer is, yes, it would only have been a malice defense, but that doesn't matter, notwithstanding Wyatt. Is that your answer? The answer is that it is the same type of defense that this Court recognized in prior cases as supporting qualified immunity when needed to protect the decisions of the government, and Richardson itself recognized this — Doesn't that suggest really that we don't have a historical test anymore, that really all we're looking to is policy considerations? Not this case at all, because you've got layers. You have layers of history. You have the history recognized in Richardson for lawyers who are working at the behest of the government, that specific history. You have the general history where attorneys were provided a reasonable and good-faith malice and probable cause type of defense, which again is the type of defense that gets turned into qualified immunity when needed to protect government's reasoned decisionmaking. And if I could reserve the balance of my time. Thank you, Ms. Millett. We'll hear from Ms. Saharsky first. I'm sorry. That's all right. Ms. Saharsky. Thank you, Mr. Chief Justice, and may it please the Court. Petitioner may assert qualified immunity on the same terms as the fire department officials, because he was working side by side with them and under their supervision on a personnel investigation. And this is really exactly the situation that the Court reserved and anticipated in Richardson, that when you have a situation where private and government workers work closely together and you deny qualified immunity to the private person, it would directly affect the ability of the government employees to do their jobs. So if they don't work closely together at all, and it's just this one fellow conducting the investigation, he wouldn't have qualified immunity? No. This is a situation in which there's a very close working relationship. I'm sorry, no, I'm wrong, or no? He likely would have qualified immunity. The closeness of the relationship is very apparent here, but as a general matter, it is our position that when people are doing the business of government, private people can be sued under Section 1983 or Bivens, there should be a presumption in favor of qualified immunity. And Richardson is not to the contrary, because that is a fairly unique case in which the private prison was so removed from the day-to-day workings of government officials that it would not have furthered the purposes of qualified immunity, to give qualified immunity to the folks in those situations. So what we're talking about, like... It's just hard to imagine anything more imbued with state action than imprisoning someone. That's the problem I have in thinking about the case. Right. I mean, several members of the Court said that in Richardson, and the Court's opinion really talked about the uniqueness of the situation there, that Tennessee was doing something really out on the forefront in terms of giving the day-to-day decision-making to the folks in that situation in the private prison, and only checking up. There was monitoring, you know, annually. It was really not much ongoing monitoring at all. And the Richardson court, you know, found that to be a unique situation, but it distinguished the situation that you have here, where you have lots of work... Kagan Isn't Richardson really all about how market forces would make immunity unnecessary? And how is it that market forces play any different role in this case than they do in Richardson? Well, we understand the Court's discussion of market forces to be really important in the context there, where you don't have individuals who are working closely with government. The Court needed — and the purposes of qualified immunity wouldn't be served in terms of deterrence and ensuring good government decision-making — that the market forces discussion was the Court reassuring itself in those circumstances, that there would still be private prison companies that would be willing to take on the business of government, and would be able to do it, you know, consistent with the Constitution. So we don't understand the Court to have been setting out market forces as a test for qualified immunity, because, as your question seems to suggest, taken to its logical conclusion, any time a private person is being hired by the government, you could say, well, there's a market for the person, couldn't someone else fill those shoes, et cetera, et cetera. So we think the Court's market forces decision was fairly confined to what the Court itself described as a unique situation in Richardson. And the Court— Do you think market forces do operate differently here, or is it basically the same thing? We do think that there's a difference in that the attorney in this situation has private clients that that attorney can work for, whereas the private prison company really could only work for the government. Ginsburg. I don't think that in this case the firm the lawyer was associated with, that its dominant business was giving advice to local government, local municipal government units. Yes. I mean, that was an important part of the firm's business, but Mr. Filarski is trained as an employment lawyer and has, you know, broad training and expertise in employment related manners. So there's certainly other work that could be done. But, you know, what we thought the core of the Court's decision in Richardson was really focusing on the purposes of qualifying immunity and whether they would be furthered by giving them to the private prison. And the private prison part of the Court— You seem to assume or to acknowledge or to concede that market forces do not operate for government employment, that all government employees are doing it out of love? I mean, why does market force eliminate this defense for somebody who's an employee of a private company but not for somebody who's an employee of the government? I'm sorry, Justice Scalia. I didn't mean to suggest that we thought that the market forces inquiry was particularly relevant to the answer to answering the qualified immunity question. I'm just explaining that the way we read the Court's opinion in Richardson, which obviously the members of this Court are the experts on, is that the Court was looking to market forces to reassure itself after it determined that the purposes of qualified immunity just wouldn't be served by giving an organization that was so far removed from the day-to-day workings of government the protection of qualified immunity. The Court just — the market forces really was just something unique to that case. And what we think is the most relevant is what the Court started with, both in the decision in Wyatt and in Richardson, which is, is it necessary to give qualified immunity here to make sure that there's principled and fearless government decisionmaking? It's the business of government that's important. And in this case, although Petitioner is an attorney who has his own fiduciary obligations, it is certainly the case that when he was threatened during the conduct of this personnel investigation, that that is something that potentially could chill his behavior, and to the extent that he cabins the advice that he gave to the fire department officials, that affects the ability of government to do their job. And I might give the Court the opportunity to do that. Sotomayore, that would be a breach of his duty as an attorney. I'm saying he's an attorney. And he would be subject to malpractice in that case. You seriously, I find this whole argument about market forces with respect to attorneys representing people odd, because there's a whole slew of unemployed lawyers who will be happy to take on any government service they can. So going back to the, that's what I consider the central argument you're making, which is, will it chill advice? And I'm not sure how it can, given the independent fiduciary duty that an attorney has to zealously guard his or her client's interest. I'm saying that an attorney's in a difficult position there, and it's the same position that a government attorney would be in, and the Court has extended qualified immunity to government attorneys who are in this position, either giving legal advice, like in the Burns case, or serving as prosecutors. And there's just no difference when he's operating in this case that would make him distinguishable from a government attorney. To answer another suggestion, I think, in your question, the Court talked about, in terms of deterrence and chilling, making sure that there were talented candidates who wanted to take on the position of government. So the Court has never said, you know, we're concerned about wiping out the market entirely. It said, you know, if there is a segment of the market that will not take on this business anymore, that's a fairly serious problem when we need to make sure that the government of business is done. And if I can just give the Court another example to, perhaps outside the context of this case, see how a private person being denied qualified immunity would affect government employees. Consider a fire department that has some full-time fire department personnel, and also some volunteer firefighters. When they're working together and fighting a fire, you don't want the volunteer firefighter thinking, should I break down this door? I might face personal liability. You want him to make fearless decisions, because whether he breaks down the door or not is going to directly affect the ability of the other folks who are trying to go into those homes, trying to stop the fire to do their jobs. That would also be true in the context of court security. The United States Marshal Service sometimes uses private security guards, and we have direct supervision and control over them, but. Roberts, what if it's a 100 percent purely volunteer fire department? I mean, the town, whatever, contracts, outsources, whatever, but it's just run by volunteers. Is your answer the same? I'm trying to get at your point about they're working with or coordinating with government employees. And your argument seems a little derivative. You're saying the whole point is to protect the government employees, and you have to have qualified immunity for the non-employee to do that. But does your argument apply when there are no government employees around? It's just difficult in the fire department situation, even if there is an all-volunteer force, that there wouldn't be some type of direct supervision by the mayor, by the city council, et cetera. You know, that's particularly in the local government situation. Those folks would tend to work fairly closely together. It is, in the case of deterrence and wanting fearless decision-making, a primary concern that we have about protecting government. But we need to protect the individuals to protect government. So we do need to make sure that their decisions aren't shilled, that persons like Petitioner are willing to take on representation of this kind. And the Ninth Circuit's suggestion that no private person should be — should get qualified immunity, even when they're doing the day-to-day business of government, is just one that can't be reconciled with this Court's decisions in Wyatt and Richardson. Ginsburg. There's another part of qualified immunity, and I know it's not teed up in this case, but why is it reasoned decision-making to recognize you can't enter a home without a warrant, but you can tell the occupant to bring out every item that you want to see? It seems to me that that's not — that there's clearly established law to say that's wrong. Well, the Ninth Circuit found that it wasn't clearly established law. I understand that it's a fairly difficult Fourth Amendment question, but as you say, it wasn't teed up in this case. It wasn't — there wasn't a petition on this question. It wasn't raised in the brief in opposition. You know, in light of the fact that the Ninth Circuit found it wasn't clearly established, it probably wouldn't make sense for the Court to address it. One thing I might point out along those lines is that both the district court made a finding on page 49 of the joint appendix, and then the Court of Appeals made a finding in its opinion. And this was the reason that the Court of Appeals found it wasn't clearly established, was because there was no attendant threat in terms of employment consequences to Respondent in this case. Another question that's not teed up and I guess not presented. I'm just curious to know about the history of the — was it argued that there was no State action here, or is — and in your view, is that a very simple question to answer? In terms of the argument, Petitioner conceded throughout the litigation that he was a State actor. In the complaint, Respondent actually suggested he was an employee of the city. In terms of whether he was asserting the authority of State law, it does seem fairly clear that he was asserting the authority of State law here. Thank you. Thank you, counsel. Mr. McGill. Thank you. Mr. Chief Justice, and may it please the Court, the Petitioner has not demonstrated a historical basis of immunity of common law for somebody in Mr. Filarski's situation. The Petitioner has also not shown that the immunity's purposes also serve Mr. Filarski's situation here. I want to put those two issues aside. We'll talk about that in a minute, but I want to address the issue that has been most discussed the most, which is the Petitioner's test. The test that the Petitioner proposes that this Court adopt is one that is very difficult to use. The test is simply whether the individual is temporarily retained in the functional equivalent of a government employee, considering three factors. The three factors are, one, the nature of the role performed, the close supervision and your coordination with the government official. But what about your test? What is your test? Well, our test is Richardson. I think Richardson is the correct analysis. The Court starts with looking at a historical basis of an immunity of common law, and then from there works to the policy reasons. Suppose you have a lawyer who is a part-time employee. Does that matter? A part-time employee of a government unit. Well, he would be he would receive Harlow immunity. So the difference, your difference is between an employee and an independent contractor? Absolutely. And isn't that often a very difficult determination under the law? No, I don't think so. Any time, like in Mr. Fularski's situation, Mr. Fularski is a for-profit law firm. You know, he sells himself as an experienced professional in the field, providing legal services to the city. But there are a lot of, there are a lot of, I think, well, there are a lot of law firms, I think all law firms other than public interest firms are for-profit firms, and the attorneys are part-time employees of municipalities and other government units to perform various functions, part-time judges, part-time prosecutors. Well, the Court's made a distinction in its past decisions about functions that are integral to the judicial process. So when you talk about a judge or a prosecutor, that's a special function. That's sort of a different situation. But never has there been an immunity for an attorney just because they happen to be an attorney. There is no historical basis for that. And neither the Petitioner nor the Respondent nor the Seven-and-Meekie have that. Well, now you're talking about history, but I want to know how we are, how the courts are to determine and why it should matter how a municipality sets this up. Suppose the town had hired Mr. Fularski as a part-time town employee. So he has a certain one-year contract or six-month contract or something for a certain amount of money to perform services for a certain number of hours. You would say that he would be entitled to qualified immunity, then? No, I would say that he would not be entitled to qualified immunity. Why? Because he's a employee. They pass a resolution saying he's an employee of the town. Well, they passed a resolution to hire him and his firm to provide those services on a temporary basis or a basis of six months. But he still is an outside attorney, and he's probably got to has other clients and has other interests involved. And the situation is different. It's an entirely different system when you have a private law firm operating for profit, contract. Yearlong employment is not employment? If I accepted a government job for only a year, I'm not a government employee? I don't understand that. Well, as I understood the hypothetical, if that individual is working as an employee of the city, then he's working as an employee, he's hired for one year, it's a one-year contract. Why does that make him not an employee? Or is it the fact that he's a lawyer? And all lawyers have a certain independent responsibility. They can't do some things that government superiors might tell them to do, right? So are you going to say all lawyers are or cannot plead qualified immunity? Well, our position here in this case is that Mr. Filarski was not necessarily acting in the role of an attorney. He was functioning as an internal affairs investigator. And it's doubtful that he would have maintained an attorney-client relationship with the city, given that he was hired and retained to conduct a fact-finding case. Scalia Yeah, it makes it even easier then. I thought the attorney thing would help you. But if he's not even functioning as an attorney, he's functioning as a government investigator. But if he has other clients and he works for a profit, then he operates in a different system. And he's not subject to the same system. Scalia But if they had employed him for a year, exclusive employment, no other clients, you'd say that's a different case? If they employed him for longer than a year? Scalia No. I would say in fact 364 days, okay? And the deal was, you're going to work for us and nobody else. You have no other clients. Well, I think then that's where you'd have to look at the policy considerations. If he still Scalia I understand that. How do you look at it? Does that case come out the same way or not? Scalia No, I don't think it does. If he's taking that position for that term, that one-year period to make money for profit, and then next year he's going to work for somebody else. Scalia Everybody takes a position to make money for profit, don't you? How many government employees work for free? But he may be in that instance trying to form a relationship with that municipality and enter into a longer term contract.  No, he's not. I mean, he may be, I guess, but assume he's not. He's just a lawyer who's been hired for 364 days to work for nobody but the government. And you still say that he has no immunity in what he does to investigate for the government. Scalia Absolutely not. He gets no immunity in that situation. Scalia Two years, though. Three years. I'm a lawyer who enters a contract for life with this government to investigate. At that point, does he get the immunity? Scalia No, because there's no historical basis for immunity. It just wasn't there. For that function that Mr. Flaherty was providing, there's no historical basis for it. And typically that would end the Court's question. That would end the inquiry. You only get to the policy considerations. Sotomayor I thought you were drawing a distinction between employees and independent contractors. Is that the distinction you're drawing or not? Scalia Well, the distinction really is if you are a private actor, you're subject to a different set of rules. You're subject to the market pressures and the competition that are going to correct your behavior and are going to satisfy the same purposes that immunity provides. Breyer What would have happened if Abraham Lincoln today were there, and I gather what happened is they thought the local prosecutor is good, but Lincoln is better. So we'll let Lincoln prosecute this case. Now, in your view, Abraham Lincoln would not have had immunity, but the local prosecutor would have. They did exactly the same thing, by the way. It was just that Lincoln had a better reputation. Every word was the same. As a historical basis, there does not appear to be immunity for private prosecutors. However, this Court over the years has provided immunity for the judicial. Breyer But in your opinion, I'm asking you, in your opinion, when I write this opinion, is I could say not even Abraham Lincoln, when he acted as a public prosecutor, brought in for the occasion. In your opinion, he should not have the immunity that Joe Jones, the local prosecutor, would have. I'm just trying to get your opinion. I think that that's a much closer call. Is it because it's Abraham Lincoln? You should say section 1983 didn't exist. That's your answer. That wouldn't be it. But I think it's a much closer call because of he was engaged in a prosecutorial function, which this Court over the years has. But investigatory functions, they don't get immunity, so if Lincoln had looked into it and said, you know, I've looked into this, I don't think we should prosecute. And what they said was, use your judgment. Now, I Okay. So there are problems with both standards, both ways. This is one of the things that is bothering me. Imagine in this case, the lawyer sat down with the other firemen, the supervisor and so forth, and they said, not necessarily this event, they said, we want to do X. And the lawyer said, I have to tell you, it's unclear whether X is constitutional or not. Now, because it's unclear, I also have to tell you that if you do it, you will not be held personally liable. Now, can a lawyer give that advice? Yes. When he does, of course, he's subjecting himself to personal liability. Now, it's that conflict that is worrying me, among other things. So what do we do about that? The lawyer is being asked to give advice to the client under the canons of ethics. He ought to have their interest at heart. And in doing that, he's subjecting himself to what could be hundreds of thousands, millions of dollars' worth of damages or whatever, in suits for malpractice. Is there a way, if we side with you, out of that dilemma? I don't think that that's necessarily an immunity question. It's more of a liability question, because it very well may be that we don't. But what I'm assuming in the question is, since it's a close question, he has to worry about a court saying, you were wrong in saying it was legal. It was not legal. The matter was unclear, but it was not legal. At that point, he becomes subject to much damages, but of course the others do not. And he had to tell them, go ahead with it. You understand my point. So what is the end? But I think what it is, the difference there is that there you have an attorney just providing advice, which is different than what happened here, where you actually have the attorney engaged. Well, that may be, but what I'm trying to work out is what is your set of rules if we don't say, if we don't say you have immunity, and you agree that this is a bad dilemma, at least in my hypothetical case, I'm trying to work out what set of rules you advocate in order to either say, well, that's too bad, the dilemma is there, we can get around it, or something else. That's what I want your answer. If the attorney under those circumstances could be held liable for a constitutional violation for simply giving advice, and he happens to be a private attorney working for profit, then he wouldn't have immunity. Breyer, I change it slightly, and he puts them up to it. I don't know why he couldn't. I mean, you know, he says go do it. Or in other words, my hypothetical, okay, go ahead. I think the answer is the same. If somehow under those circumstances the attorney could be held liable for giving that advice, and he's a private attorney, and he doesn't pass the Richardson test, then he would not be entitled to immunity. Roberts, your case So there's no, there's no, I'm sorry. Roberts, no, you can finish your answer. There's certainly no, there is no historical basis of immunity just for giving legal advice. The Petitioner hasn't pointed this Court to any firmly rooted tradition of an immunity. Your case highlights, I think, is a very good example of why the lawyer ought to have qualified immunity. I mean, this was a case where it looks like there's a lot of threatening and bullying going on. I mean, the lawyer says, you know, we're going to figure out a way to name you, Mr. Filarski. You're issuing an illegal order. If you want to take that chance, go right ahead. You might want to think, take a minute to think about it. I mean, it seems exactly the kind of situation for which qualified immunity was developed. We want Filarski to give what he, do what he thinks is the right thing in this situation. We don't want him to be worried about the fact that he might be sued. And you have a lawyer here saying, well, if you do that, I'm going to sue you. So Filarski, naturally, or some lawyer in that situation is going to think, wow, do I really want to run that risk? Isn't that exactly why we have qualified immunity? No. And the reason for that is that because Mr. Filarski is a private individual, he doesn't need qualified immunity. You know, Richardson has decided in 1997, but in 2003, the Ninth Circuit issued its decision in Gonzales v. Spencer. And in Gonzales v. Spencer, the Court held that private attorneys like Mr. Filarski don't need immunity. They don't get immunity. So the law on the land since 2003 is what's going to be used for that. Roberts. Well, that's easy for a judge to say, because they're absolutely immune. But for the lawyer who's sitting there and saying, I'm going to sue you, if you were a lawyer and you're sitting in that situation, isn't that going to enter into your mind? You say, well, sue all you want. I don't care. This is the right answer. But for nearly a decade, the law within the Ninth Circuit has been that private attorneys don't receive immunity. Right. That the fact that is, is that Mr. Filarski knew going into that investigation that he wouldn't have immunity for anything he did. And it didn't deter him. It didn't make him — Well, how do you know? Well, because he, in the light of the threats that he received, he still went forward with the — what was deemed to be an unconstitutional search. So the policy purposes of, you know, wanting to prevent unwarranted submissivity and deterring talented candidates from working for the government, they're immune. Well, he had the chief issue the order, right? And then the chief later on says, well, he told me to issue the order. I mean, I'm not quite sure that things went exactly as they would if you had qualified immunity. Well, Mr. Filarski said, and this is what he said on the record, it's in the transcripts in the Joint Appendix, is that he's issuing the order on behalf of the Department. That's what he said. And then there was some discussion back and forth between Mr. Daly's attorney and Mr. Filarski, and that's what led to the formalization of the order. Scalia I understand that there's a lot of bad, cowardly legal advice being given in the Ninth Circuit. I don't really know that, but you don't know the opposite either, do you? I don't. Ginsburg Why didn't you cross-appeal on the clearly established law? Because then you could concede, so arguendo, he had qualified immunity, but the advice that he gave was contrary to clearly established law. Filarski So why did the Petitioner or the Respondent not cross-appeal? Why didn't you bring up that issue? I think it was that's sort of the law of the case, is that the Ninth Circuit found that there was a constitutional violation. So we obviously didn't want to appeal that. Ginsburg No, but whether it was clearly established. In other words, what we had here was recognition, we can't go into the House, we can't go into a House, private House, without a warrant. So, in fact, Filarski said something about, I know a way to get around that. We just tell them to bring out the items. Right. I — my personal opinion and our position has been is that it — the law was clearly established on that. Why the decision was made not to cross-appeal on that, I'm not — I'm not sure. But — Alito Were you saying it's clearly established that there isn't a difference between going in and looking for the insulation, et cetera, and telling him to bring it out? Is it clearly established that the — that as a condition of employment in a situation like this, the employee cannot be required to submit to a search? I think it's pretty well known that the House is — is helped. Roberts Well, particularly — well, even as — the reason it's an issue is because he says, look, I've got this stuff at my house. That's how his defense is. I haven't used it. I've got the insulation there. So you think it's still clearly established that it violates the Fourth Amendment for the city to say, okay, well, show it to us if you want to use that as your defense? Yes, I do, because it — certainly Mr. Filarski didn't have any reasonable suspicion to believe that Mr. Day was lying or was being dishonest. He certainly didn't have probable cause. He had a hunch, and then that's what he said. He said it during the interview, that I don't necessarily know that you're lying. I just — I want to see if you are. So, you know, the investigation turned from wanting to see whether Mr. Day was off work on false pretenses into, well, I don't have anything there, so let me just see if he's lying just for the sake of it. And that's when they ended up issuing that order. I think that would be a different situation if perhaps you could argue that they had a reasonable suspicion or had some other cause to search his house, but here they didn't. So I think it is, under those facts, clearly established. Kagan, back to immunity. One thing I don't understand about our law here, you say there was no historic basis, and I have to concede that that's right. It seems to me that there's only — there was only a malice defense. But isn't that always true when it comes to a private person? In other words, of course there's no historic basis for qualified immunity. This kind of immunity was developed in 1970. It's sort of by definition there's no historic basis for this sort of immunity. So to say that the historic basis matters is really to say that private people never get Harlow immunity. Well, I think that that's right. There was not qualified immunity at common law, but there was absolute immunity. And there — I mean, I can't go back and think about all the different immunities that may or may not have existed, but I do know that the Petitioner has the burden to bring forth a firmly rooted tradition. This Court has said over and over that it's not going to create new immunities. Alito, but the Court's cases are a mix of history and policy. The Court has recognized both absolute immunity — has recognized absolute immunity in instances where there was an absolute immunity at common law. Isn't that true? Right. And the rule about malice being the criterion of liability, that applied not just to private lawyers, but to government lawyers as well, didn't it? It did. That good faith defense applied. So if we're going to be historically faithful, we should deny any qualified immunity to government lawyers or expand the government immunity for government lawyers so they can do anything so long as it's not malicious. Well, that's what this Court would have to do. It would have to basically expand what was at common law defense. So the devil with history, right? Well, it would result in this Court having to expand that immunity that it expanded in Harlow to private individuals. And our position is that because a private individual, like Mr. Fularski, is a market participant, the purposes of immunity aren't served. They just simply aren't needed. And I was mentioning earlier about the — What about — what about the argument that Fularski makes, that if there were to be a proceeding against him, inevitably the witnesses would be the government employees. They would be the battalion chiefs, the fire chief. So one of the reasons for the qualified immunity is you don't want to disturb government employees in the routine performance of their work. Certainly in this case, there would be disruption, distraction of these government employees. Well, there probably would be some distraction. That would be inevitable. But it would be no different than the distraction that the government would face when a private attorney is sued for any number of claims, malpractice or, you know, some State law violation. And to say that the distraction that the government is going to face based on just what is probably a small sliver of the big pie, which is, you know, 1983 litigation, is pretty speculative. And, of course, it doesn't answer the question that the government employer itself can still be liable under Monell. So even though the immunity may kick in and the individuals may get off or may not have a stand suit, there are still occasions when the government is still going to be there, so that distraction is still going to exist. Roberts. What if Filarski was there, you know, hired to help the fire department with his issues, and he did absolutely nothing? He just sits there and watches. The battalion chief says, I want to do this, I'm going to go get the stuff, you bring it all out, and he just sits there. Doesn't see any reason to offer any legal advice or opinion. Could you still sue him under 1983? Well, I don't think he would be liable, but I don't think under that situation he would have participated in the. Really, he has an obligation as a lawyer to speak up if he thinks something illegal is going on? That's his job, and he doesn't he just sits there quietly? No, I don't know that he would be liable under Section 1983. But if he were, and he were a private lawyer, he would not have qualified immunity. He would still be under the same Richardson test where there's no historical basis for it, and because he's that private individual working under, you know, working for profit and subject to market pressures, he wouldn't. What if he's for profits? The significance of that eludes me. Sometimes people act out of, you know, public service, and particularly in these sorts of situations, the town needs a lawyer and he's helping out. If he were purely a volunteer, it would be a different answer? If he were purely a volunteer, it very well might be a different answer, because some of those policy concerns that Richardson talked about and discussed may not be present. So you have to apply the test to the situation he had before you. And, well, and what if he gives the city a discount? He's working for half his fee because it's the city he wants to help out, but he can't do it totally for free. So it's 50 percent his normal rate. I don't know that 50 percent makes a difference, and earlier we were discussing the one year, the two year, and so forth, the length of the contract. I don't think that those things necessarily make a difference. The point is whether Mr. Filarski was undertaking that representation or that role in a manner that made him subject to other regular market pressures. If he was performing a function and competing against other lawyers or other investigators performing that same function, then the point is there, you know, he isn't going to be as timid because he's going to want to do a good job, and the same policy concerns that are present for that government lawyer aren't there for him as a private individual. Alitoson Suppose a municipality were to, or a State were to abolish all the civil service rules and all the special rules and go back to employment at will for government employees. Would that take with it the whole qualified immunity regime? I don't think that it would. In other words, is the question whether or not if we abolish the merit system or civil service system, would qualified immunity still be needed? I think if that were the question that, well, that's a tough question to answer, but it very well may not be, because, you know, part of the decision in Richardson here was it was they're operating within a different system, private versus public. And if you start to make the public system look more like a private system, then it very well may be that immunity won't be needed at all. Alitoson I mean, it seems strange because the immunities, at least some of the immunities long predate the establishment, the institution of the civil service system. Everybody is subject to market forces. Every person who works is influenced by market forces to some degree. Isn't that correct? Fisher I think that that's correct, but when you have a civil service system, a merit system, it's not as easy to correct behavior as it would be for, say, a private person. For, like, Mr. Filarski, if he was not performing at the level that the city of Rialto had hoped, he can be replaced quite easily. For a government employee, though, there are obviously those civil service protections and it's not so easy to do that. So that's what I'm saying. Sotomayor That's not true of most lawyers. Fisher Pardon me? Sotomayor Most lawyers are not part of the civil service. Internal lawyers are not part of the civil service system. They are generally considered employees at will. At least most of the circuit courts have so held. Fisher I'm not familiar with whether Sotomayor They are policy makers and as such are not subject to civil service protections. Fisher Well, I know that some subsections of lawyers within a government can be represented. So they very well may have some protection, but maybe it's not quite to the extent that more of the rank and file would have. Alito Well, the political appointees within the United States Department of Justice are not protected by civil service. So should they lack immunity? Fisher No, because they would get it under Harlow. They would have immunity under Harlow. Alito They're subject to market forces, aren't they? Fisher They very well may be, and it may be for me to say that maybe they shouldn't have an immunity or it's not needed, but at this point the law is under Harlow that they would receive it. Scalia What if I told you that all the lawyers at the Department of Justice are regarded as being employed at will and that all of them can be fired? Fisher Well, I think Scalia Do you think the rest of them don't have any protection? Fisher I think that the answer would be the same, in that they very well may not need immunity because those pressures and those concerns underlying immunity aren't there. Scalia Well, that's going to be disappointing news for all those attorneys at the Justice Department. Fisher I just want to go back and talk about the Petitioner's Test a little bit, too, because the Court had some concerns about it, and I share those same concerns, and that's that the test requires a factual analysis, you know, being temporarily retained and close coordination and supervision. Those are highly factual questions that aren't going to bode well for an early resolution of a case, and a lawyer is going to be able to plead around that test very easily and take the case into full-blown litigation and discovery and so forth. So that test is problematic. In addition, as I understand it, the test is going to be extended well beyond attorneys. The test results in anybody working for the government under, you know, close coordination or supervision, whatever that means, is going to get immunity. So that is well beyond attorneys to anybody. Anybody who contracts with the government and meets that factual test is now going to have immunity. And that's something that's a huge step that this Court, you know, should not take, especially when there is no historical basis for it and the policy concerns are not present. But even if you apply that test to Mr. Fularski under these facts, Mr. Fularski would not have immunity. He wasn't temporarily retained. He worked for the city of Rialto for 14 years as a business, for-profit. He had many clients, and the city of Rialto was one of them. It wasn't that he was temporarily retained. So he doesn't even meet that element of the Petitioner's Test. Mr. Fularski was not performing any functions. Roberts, are all of these objections applicable as well to the determination of whether there was State action from the attorney's conduct? The concerns about there being a factual inquiry? Yes. I don't think so. I mean, as an attorney, I would have to certify in a pleading that the relationship between the person I'm suing and the government. So I think that there would have to be information put forth in the pleading that would establish that, and I don't know that one could simply make up State action for purposes of pursuing a 1983 action. So it may be that there's a factual inquiry, but I don't think it's as great or nearly as great as the temporarily retained or the close coordination components to the Petitioner's Test. Mr. Fularski was not performing a function that is uniquely governmental. Investigating workplace misconduct is not a governmental function or it's not a prototypical governmental function. But your objection is not that he was investigating workplace conduct. Your objection is that he was ordering people to tell your client to bring out stuff that was in his house. Correct. But it was under the auspices of a workplace investigation, if you will. Yes, but telling people basically either executing a search or in effect executing a search, that is a uniquely governmental function. Executing a formal search by the government is something that's a role that the government performs, but I wouldn't say that that wouldn't equate executing a search with what occurred here. Well, let me restate that, I guess. What I mean to say is that Mr. Fularski, the function, the role that he was performing was that of an internal affairs investigator. But if he did the same thing for a private company, he could do the same thing for a private company, say, you know, you're going to get fired unless you substantiate your story by bringing the stuff out of your house. That wouldn't be a search, an unlawful search, right? It could have happened in a private company. It could and, yeah, it very well could have. And that's my point, is that what Mr. Fularski did, his role was not uniquely governmental. He wasn't performing that governmental function. Well, there's very little that is uniquely governmental. I mean, my goodness, if we denied immunity to all those acts that are not uniquely governmental, there would be very little immunity, I'm afraid. Okay. Thank you. Thank you, counsel. Ms. Millett, you have three minutes remaining. Thank you. Justice Breyer, your dilemma is at the crux of why qualified immunity is appropriate here, because not only do you have the lawyer saying, well, you'll be all okay, but I'm going to be going down in this lawsuit. The lawyer is going to have a duty to inform his client that, in fact, this will lead to litigation, you will be protected in your personal capacity, but guess what, litigation is going to ensue. That can influence and deter both a lawyer's willingness to work for the government at these cut rates or pro bono rates, subconsciously the advice they give, and it can make the government not want to act on the advice, which is precisely what we want to protect. Nothing like that was happening in Richardson. The government was nowhere on the scene when the constitutional decisions being challenged. There weren't even percipient witnesses in that situation. The second point I want to make is fiduciary duty doesn't change it other than it confirms that he's working in the interest of the government, but every agent has a fiduciary duty to their principal, and so you can't deny qualified immunity on that ground or you'll have a sweeping decision on your hands. The market concerns, Justice Sotomayor, the test is not whether a warm body could be found to fulfill this operation if he won't do it. This is a completely different market from Richardson where there's only one client for prisons and that's the government. Here the government is competing for the services. When it needs a skilled attorney, when it wants people of the caliber that the government service needs and deserves, it is competing. And right now, as the Chief Justice recognized, a lot of times, including for Mr. Filarski, that's done at discount rates. These folks, this is already a marginal decision. And if you want to talk about market decisions, then you're going to push that weight. And if the answer is, if you decide to take on this pro bono representation or cut your rates out of public duty and a willingness to serve your government, guess what comes with it? You alone will be left holding the bag at the end of this for the governmental misconduct. Section 1983 is supposed to deter governmental conduct. It is not supposed to deter the reasonable advice given by lawyers to governmental clients. The court has no further questions. Thank you. Thank you, counsel. Counsel, the case is submitted.